# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| CSX TRANSPORTATION, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-285-RL-PRC |
| | ) | |
| CHICAGO SOUTH SHORE AND | ) | |
| SOUTH BEND RAILROAD, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Chicago South Shore & South Bend Railroad's Motion to Compel Production of Documents [DE 36], filed by Defendant Chicago South Shore & South Bend Railroad ("CSS") on November 13, 2014, and Plaintiff's Motion to Compel Production of Documents [DE 43], filed by Plaintiff CSX Transportation, Inc. ("CSX") on December 12, 2014. On January 23, 2015, the Court took under advisement both motions and ordered each party to produce for in camera inspection certain bates stamp numbered documents. Both parties have complied with the Court's order.

In this lawsuit, CSX claims that CSS owes it money damages arising from a train derailment on a siding and the subsequent collision with a second train on a nearby main track that resulted in damages to CSX of more than $4 million. CSX has alleged claims sounding in negligence and breach of contract, seeking a determination of which railroad is responsible for the derailment. Both railroads conducted investigations following the crash.

A party may "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things." Fed. R. Civ. P. 26(b)(1). Relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). A party may seek an order compelling discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a). The burden is on the objecting party to show why a particular discovery request is improper.

CSX and CSS each seek production from the other of documents that have been withheld based on the work product doctrine. The work product doctrine applies to documents and tangible things that are prepared in anticipation of litigation or for trial by and for another party or its representatives. Fed. R. Civ. P. 26(b)(3)(A). The test for each document is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000) (citing and quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983)).

The "remote prospect of future litigation" is insufficient to bring the work product doctrine into play. *Binks Mfg.*, 709 F.2d at 1118. "If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery." *Id.* at 1119 (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)). More specifically, "[t]he fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product.'" *Id.* (same). "While litigation need not be imminent, the primary motivating purpose behind the creation of a document or investigative report must be to aid in possible future litigation." *Id.* (same). The burden is on the party claiming the privilege to establish that the document falls within the privilege. *Binks, Mfg.*, 709 F.2d at 1119.

*1.     CSS's Motion to Compel Production of Documents*

In its motion, CSS represents that CSX immediately dispatched many people to the scene of the derailment both to investigate the cause of the collision and to begin clean-up activities to put the track back into service. CSS argues that CSX refuses to produce certain documents reflecting its investigation of the derailment of the first train, and CSS believes that the withheld documents were prepared in the ordinary course of the CSX's business. One of CSX's Train Accident Prevention ("TAP") Committee members was CSX Track Engineer Chuy Martinez, who was responsible for investigating the cause of the accident. CSS argues that the records of the TAP Committee investigation are not protected by the work product doctrine and that the production of these documents is relevant to its defense. CSS also argues that, even if the work product doctrine is found to apply to any of the documents, CSS has a substantial need for the documents to defend itself in CSX's lawsuit. *See* Fed. R. Civ. P. 26(b)(3)(A).

In response to the motion, CSX produced nine pages of documents but otherwise stands behind its decision to withhold the remaining documents as privileged under the work product doctrine. CSS asks the Court to compel CSX to produce all documents in CSX's possession that relate to, reflect, or discuss its investigation into the cause of the derailment, including, but not limited to, the documents that CSX has withheld from production on the basis of the work product doctrine.

As an initial matter, the Court is not persuaded by CSX's argument that, because CSX was not *required* to investigate why *CSS*'s train derailed, CSX's investigation into why *CSS*'s train derailed (as opposed to why its own train derailed) was solely for the purpose of establishing CSS's culpability for damages in anticipation of litigation and not as part of its post-derailment investigation. Whether CSX was *required* to investigate CSS's derailment is irrelevant. The TAP Committee investigated both derailments as part of its investigation of CSX's derailment.

The Court ordered CSX to produce for in camera inspection documents with the following bates stamp numbers that it identified on its privilege log as protected by the work product doctrine: CSX 1579, 1580, 1581, 1582, 1583, 1586, 1588, 1589, 1590, 1596, 1597, 1598, 1599, 1601, 1602, 1612, 1613, 1614, 1615, 1616, 1618, 1624, 1632, and 1633. CSS breaks these documents down into three categories, each of which the Court considers in turn.

First, CSS identifies two documents that were created within days of the April 8, 2012 derailment and were either authored by or sent to Chuy Martinez or by others who were identified by CSX as taking part in the investigation, including John Bradley, Rick Reed, and Brandon Wilkens.

Document CSX 1614 is identified on the privilege log as an email exchange authored by Ed Sparks and Chuy Martinez on April 8 and 9, 2012, with recipients listed as Chuy Martinez, Joshua Brass, Tod Echler, and Ed Sparks, and described as "internal communication prepared in anticipation of litigation." Although CSX stated that it produced all documents authored by Martinez in the days after the crash, CSX did not produce CSX 1614. This document was prepared as part of the internal investigation and not in anticipation of litigation. CSX is ordered to produce it.

Document CSX 1615 is identified on the privilege log as an email exchange authored by John Bradley and Bruce Rose on April 9, 2012, with recipients listed as Bruce Rose, John Bradley, Rick Reed, Brandon Wilkens, and Stacey Posey, and described as "internal communication prepared in anticipation of litigation in response to the April 8, 2012 email from Reed." This document was prepared in anticipation of litigation and is protected by the work product doctrine.

Second, CSS identifies several documents in CSX's log that were made in the first month following the derailment. The Court has reviewed Documents CSX 1579-80, CSX 1581, CSX 1582-83, CSX 1586, CSX 1616, CSX 1618, and CSX 1624. All of these documents are protected by the work product doctrine.

4

Third, CSS identifies several communications in CSX's log that were made within the subsequent two to seven month period following the derailment for which CSX employees charged with investigating the derailment are identified but no attorneys are involved in the communication. After an in camera review, the Court finds that Documents CSX 1588-89, CSX 1590, CSX 1596-97, CSX 1598-99, CSX 1601-02, CSX 1612, CSX 1613, and CSX 1632-33 are protected by the work product doctrine.

The Court finds that CSS does not have a substantial need for the materials protected by the work product doctrine at issue on this motion. *See* Fed. R. Civ. P. 26(b)(3)(B); *Appleton Papers, Inc. v. Envtl. Prot. Agency*, 702 F.3d 1018, 1023 (7th Cir. 2012).

2. *CSX's Motion to Compel Production of Documents*

CSX identifies documents withheld by CSS as falling into two categories. The first is email communications that CSS withheld on work product grounds by identifying the communications as being made with a "consulting expert." CSX argues that CSS has not established that the non-parties were in fact retained as non-testifying experts. The second is communications withheld on the basis of the attorney-client privilege. After reviewing the parties' briefs, the Court ordered CSS to produce for in camera inspection documents with bates stamp numbers CSS 1523-24, 1538, 1540, 1594-95, 1609-11, 1631-32, 1633, 1634, 1636-37, 1641, 1643-45, 1646-47.

First, CSX argues that CSS improperly withheld documents based on the involvement of a "consulting expert." None of the individuals identified by CSS as a consulting expert has been identified as a testifying witness in this case, and none of them has authored any of the three expert reports produced by CSS in support of its defenses. CSS responds that these were non-testifying consultants whose communications are protected by the work product doctrine and under Federal Rule of Civil Procedure 26(b)(4)(D). CSS represents that, after the derailment, CSS communicated

5

with its insurers and consulted with several non-testifying experts regarding the investigation of the derailment and analysis of the potential damages in anticipation of litigation.

The Court has set out the standard for the work product doctrine above. As for the consulting expert, Federal Rule of Civil Procedure 26(b)(4)(D) provides:

> *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>
> (i) as provided in Rule 35(b); or
> (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). "Consulting experts do not offer testimonial evidence during a litigation proceeding, and parties are therefore not entitled to discovery from consulting experts." *Morningware, Inc. v. Hearthware Home Prods, Inc.*, No. 09 C 4348, 2012 WL 3721350, at *6 (N.D. Ill. Aug. 27, 2012).

"The central question under [Rule 26(b)(4)(D)] is whether the expert consultation took place in anticipation of litigation." *Canal Barge Co. v. Commonwealth Edison Co.*, NO. 98 C 0509, 2001 WL 845468, at *1 (N.D. Ill. July 25, 2001). "In determining whether a non-testifying expert was retained in anticipation of litigation, courts analyze the total factual situation of the particular case." *Travelers Prop. Cas. Ins. Co. v. Dist. Electrolux Home Prods.*, No. 12 C 02386, 2013 WL 1343163, at *3 (N.D. Ill. Apr. 2, 2013). "The Seventh Circuit [Court of Appeals] has further defined 'in anticipation of litigation' to mean that 'the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation." *Kingdom Auth. v. City of Rockford*, No. 09 C 50240, 2011 WL 245585, at *2 (N.D. Ill. Jan. 26, 2011) (quoting *Binks Mfg.*, 709 F.2d at 1118-19). Once it has been determined that Rule 26(b)(4)(D) applies, a party may only discover information from

the expert if the party demonstrates that "exceptional circumstances" exist. Fed. R. Civ. P. 26(b)(4)(D). The Court considers each document in turn.

The document at CSS 1538 is listed on the privilege log as authored on April 26, 2012, by Peter Gilbertson (President and CEO of Anacostia) to Andrew Fox (President of CSS). The description is email correspondence containing communications regarding retention of a consulting expert witness on behalf of CSS. The Court finds that the email is protected by the work product doctrine and Rule 26(b)(4)(D) as the content of the email discusses the retention of a consulting expert witness on behalf of CSS and discloses the subject matter on which the expert's opinion is sought.

The document at CSS 1540 is listed on the privilege log as authored on April 26, 2012, by Andrew Fox (President of CSS) to John Secor (Louisville & Indiana Railroad) and as containing communications with CSS' consulting expert witness regarding the derailment, investigation, and potential litigation issues. Document CSS 1540 is also listed on the privilege log as authored on April 26, 2012 by Peter Gilberton to Andrew Fox regarding retention of a consulting expert witness on behalf of CSS. The Court finds that both emails are protected by the work product doctrine and Rule 26(b)(4)(D).

The document at CSS 1609-11 is listed on the privilege log as authored by Randall Little (Director of Operations at Railway Claim Services, Inc. ("RCS")) to Andrew Fox (President of CSS), Jim Thompson (Vice President of Operations at CSS), coxb@railway-claim-services.com, George Green (RCS), and littlec@railway-claim-services.com. It is described as containing communications with CSS' insurer and CSS' consulting expert witness regarding the derailment, investigation, and potential litigation issues. Having reviewed the correspondence, the Court finds that CSS 1609-11 is protected by the work product privilege and Rule 26(b)(4)(D).

The documents at CSS 1631-32, CSS 1633-34, and CSS 1636-37 are listed as authored by George Green (RCS) on April 11, 2012, to Jim Thompson (Vice President of Operations at CSS) and Randall Little (Director of Operations at RCS) and are described as correspondence containing communications with CSS' consulting expert witness regarding the derailment, investigation, damages, and potential litigation issues. The documents are protected by Rule 26(b)(4)(D) and the work product doctrine.

The document at CSS 1641 is listed as authored by Andrew Fox (President of CSS) to George Greene (RCS) on May 25, 2012, and is described as containing communications with CSS' consulting expert witness regarding the derailment, investigation, and potential litigation issues. The document is protected by Rule 26(b)(4)(D) and the work product doctrine.

The document at CSS 1643-44 is a series of emails containing communications with CSS' insurer and consulting expert regarding the derailment and investigation. The document is protected by the work product doctrine and Rule 26(b)(4)(D).

The document at CSS 1645 is an email exchange between John Secor (Louisville & Indiana Railroad) and Andrew Fox (President of CSS) on April 26, 2012, and is described as containing communications with CSS' consulting expert regarding the derailment, investigation, potential litigation issues, and damages. The document is protected by the work product doctrine and Rule 26(b)(4)(D).

The document at CSS 1646-47 is authored by Linda Hock (Manager of Accounting at CSS) to Andrew Fox (President of CSS) on September 7, 2012, and contains confidential claims information protected by the work product doctrine.

In addition, the Court finds that there are not exceptional circumstances that would require production of these documents notwithstanding their designation as privileged in that CSX has not shown that it is unable to obtain equivalent information essential to case preparation from other

sources. CSX conducted its own investigation regarding the derailment and the alleged damages thereto.

Second, CSX argues that CSS has improperly withheld communications as attorney-client privilege where no attorney is identified on the communication. In the opening motion, CSX applied federal common law on the attorney-client privilege. However, Indiana state law governs the assertion of attorney-client privilege in this diversity action. *See* Fed. R. Civ. P. 501; *Illiana Surgery and Medical Ctr. v. Hartford Fire Ins. Co.*, No. 2:07-CV-3, 2008 WL 2622803, at *2 (N.D. Ind. June 30, 2008). Indiana Code § 34-46-3-1 provides that attorneys shall not be required to testify as to "confidential communications made to them in the course of their professional business, and to advice given in such cases." In *Richey v. Chappell*, 594 N.E.2d 443 (Ind. 1992), the Indiana Supreme Court "held that an insured's statement about the underlying event given to the insurer (which has a duty to defend its insured) and that is in the nature of a communication the insured would make for the purpose of obtaining legal advice, can be protected from discovery by the person suing the insured." *Compton v. Allstate Property & Cas. Ins. Co.*, 278 F.R.D. 193, 198 (S.D. Ind. 2011).

In its response brief, CSS cites *Richey v. Chappell*, for its recognition of the insurer-insured privilege and argues that the communications identified in its privilege log are subject to the privilege because they are communications between CSS and its insurance carriers or brokers regarding the derailment, investigation, and subject property damage claim. (Pl. Resp. 4 (quoting *Richey*, 594 N.E.2d at 446-47)). In the reply brief, CSX argues that CSS has failed to provide any context for the communications to determine whether the insured-insurer privilege exists, including who the individuals are, whether the communications sought legal advice, or any other details that would allow the Court to determine the merit of this privilege claim. CSX further argues that, if the

9

privilege applies, it was waived by the inclusion of third parties. The Court considers each document in turn.

Documents CSS 1523-24 and CSS 1594-95 are identified on the privilege log as authored on April 11, 2012, by John Durante, Senior Vice President at Marsh Global, to Andrew Fox (President of CSS), Vincent Missonak, and Jim O'Hara. The description is "email correspondence containing communications with CSS' insurer re: derailment, investigation, and potential claim." An in camera review of the documents (which are copies of the same email) reveals that Vincent Missonak and Jim O'Hara are both with Marsh Global and that the documents fall within the insurer-insured privilege recognized in Indiana.

Documents CSS 1609-11 are identified on the privilege log as authored on April 9, 2012, by Randall Little, Director of Operations at Railway Claim Services, Inc. ("RCS"), to Andrew Fox (President of CSS), Jim Thompson (Vice President of Operations at CSS), coxb@railway-claim-services.com (identified in the text of the document as "Brenda"), George Green at RCS, and littlec@railway-claim-services.com. The description is "email correspondence containing communications with CSS' insurer and CSS' consulting expert witness re: derailment, investigation, and potential litigation issues." It is not clear from the record that this communication involves either an attorney or an insurer. And, thus, it is not clear that the attorney-client privilege or the insured-insurer privilege applies. However, the Court has found that these documents are privileged under the work product doctrine and Rule 26(b)(4)(D).

Document CSS 1633 is identified on the privilege log as authored on April 11, 2012, by Jim Thompson (Vice President of Operations at CSS) to Andrew Fox (President of CSS), and the description is "email correspondence containing communications with CSS' consulting expert witness re: derailment, investigation, damages and potential litigation issues." As with the previous document, there is no apparent communication with either an attorney or the insurer, and, thus, it

appears that neither the attorney-client privilege nor the insured-insurer privilege applies. However, the Court has found that these documents are privileged under the work product doctrine and Rule 26(b)(4)(D).

Finally, document CSS 1643 is identified on the privilege log as authored on April 12, 2012, by Jim Ratcliff of Ratcliff Property Adjusting to Jim O'Hara and John Durante at Marsh Global (the insurer) and Andrew Fox (President of CSS). The description is "email correspondence containing communications with CSS' insurer and consulting expert witness re: derailment and investigation." Thus, this communication is protected by the insured-insurer privilege as well as the work product doctrine, as set forth above.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** Chicago South Shore & South Bend Railroad's Motion to Compel Production of Documents [DE 36] and **DENIES** Plaintiff's Motion to Compel Production of Documents [DE 43].

The Court **ORDERS** CSX to produce Document CSX 1614.

SO ORDERED this 4th day of February, 2015.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record